UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION


MARY J. FOSTER,

      Plaintiff,

v.                                    Case No. 3:08-cv-960-J-12HTS

MICHAEL J. ASTRUE,
Commissioner of
Social Security,

      Defendant.
_____

**REPORT AND RECOMMENDATION**[1]

**I.  Status**[2]

Mary Johnson Foster is appealing the Social Security Administration's denial of her claims for Disability Insurance Benefits and Supplemental Security Income. Her alleged inability to work is based on a "[r]uptured disc, high cho[]lest[e]r[o]l, [high blood pressure], diabeti[es]," and injuries to her neck and wrists. Transcript of Administrative Proceedings (Tr.) at 119. Ms. Foster was ultimately found not disabled by Administrative Law

---

    [1]    Specific, written objections may be filed in accordance with 28 U.S.C. § 636 and Rule 6.02, Local Rules, United States District Court, Middle District of Florida, within ten (10) days after service of this document. Failure to file timely objections shall bar the party from a *de novo* determination by a district judge and from attacking factual findings on appeal.

    [2]    Pursuant to § 205(a)(5) of the E-Government Act of 2002, this Report and Recommendation is available electronically. It is not otherwise intended for publication or to serve as precedent.

Judge (ALJ) Robert Droker on November 17, 2006. *Id.* at 18, 26. Claimant has exhausted the available administrative remedies and the case is properly before the Court.

On appeal, it is argued the judge "failed to specify the frequency of the sit/stand option." Plaintiff's Memorandum in Support of Her Complaint (Doc. #23; Memorandum) at 11 (emphasis and capitalization omitted). Additionally, Plaintiff contends "the ALJ erroneously rejected the opinions of the treating physician[,]" *id.* at 13 (emphasis and capitalization omitted), and "found [her] not credible." *Id.* at 17 (emphasis and capitalization omitted).

## II. Legal Standard

This Court reviews the Commissioner's final decision as to disability[3] pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Whereas no special deference is accorded the application of legal principles, findings of fact "are conclusive if supported by substantial evidence[.]" *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007) (internal quotation marks omitted); *see also Abioro v. Astrue,* 296 F. App'x 866, 867 (11th

---

[3] "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); *see* 42 U.S.C. § 1382c(a)(3)(A). An ALJ must follow the five-step sequential inquiry described in 20 C.F.R. §§ 404.1520, 416.920, determining as appropriate whether the claimant 1) is currently employed; 2) has a severe impairment; 3) is disabled due to an impairment meeting or equaling one listed in the regulations; 4) can perform past work; and 5) retains the ability to perform any work in the national economy. *See also Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004).

Cir. 2008) (per curiam); *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001) (quoting *Falge v. Apfel*, 150 F.3d 1320, 1322 (11th Cir. 1998)). Substantial evidence has been defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Falge*, 150 F.3d at 1322 (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see also Ingram*, 496 F.3d at 1260. Despite the existence of support in the record, the ALJ's determination may not be insulated from remand where there is a "failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted[.]" *Ingram*, 496 F.3d at 1260 (internal quotation marks omitted); *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

### III. Discussion

**A. Residual Functional Capacity (RFC)**

Plaintiff asserts the judge "failed to state the specifics of [her] required sit/stand option as required by SSR 96-9p." Memorandum at 11. She further claims "the evidence demonstrates [she] needs to be able to elevate her legs while sitting, which was not considered by the ALJ." *Id.* at 12.

An individual's impairments, including any related symptoms, such as pain, "may [result in] physical and mental limitations that affect what [one] can do in a work setting." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). RFC is defined in the regulations as what an individual "can still do despite [his or her] limitations." *Id.* It can include descriptions of limitations apart from those observed in the diagnosis and treatment of a medical condition. *See id.* §§ 404.1545(a)(3), 416.945(a)(3). Thus, "observations of [a claimant's] limitations from [his or her] impairment(s) . . . provided by [the claimant, his or her] family, neighbors, friends, or other persons" will be considered. *Id.* This assessment is not to be equated with the ultimate decision on disability, but is merely an interim evaluation considered along with other factors in making the disability decision. *See id.* §§ 404.1545(a)(5)(ii), 416.945(a)(5)(ii). An individual's limitations may be exertional, nonexertional, or both. *See id.* §§ 404.1569a(a), 416.969a(a).

The regulations provide that decisions regarding an individual's RFC are made solely by the Commissioner. *See id.* §§ 404.1546(c)), 416.946(c)). According to SSR 96-8p, "[i]n assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'"

The judge determined, inter alia, "the claimant has the residual functional capacity to perform light or sedentary work with a sit-stand option[.]" Tr. at 22 (emphasis omitted). Similarly, a hypothetical question posed to the vocational expert included "a sit/stand option[.]" *Id.* at 78.

Whereas SSR 96-9p states "[t]he RFC assessment must be specific as to the frequency of the individual's need to alternate sitting and standing[,]" the Court agrees with the Commissioner that in the present case a "common sense reading of the ALJ's RFC finding and hypothetical question to the vocational expert is that the ALJ contemplated a sit/stand option at will[.]" Memorandum in Support of the Commissioner's Decision (Doc. #28; Opposition) at 13; *cf. Cumbess v. Astrue*, Civil Action No. 5:07-CV-386 (CAR), 2009 WL 3064526, at *1 (M.D. Ga. Sept. 22, 2009) (relying on *Williams v. Barnhart*, 140 F. App'x 932, 936-37 (11th Cir. 2005) (per curiam)). Defendant also correctly notes "the vocational expert did not ask the ALJ to clarify the frequency with which Plaintiff needed to sit or stand, indicating that the vocational expert did not need further information[.]" Opposition at 13-14; *cf. Cumbess*, 2009 WL 3064526, at *1 (reasoning vocational expert understood hypothetical question to mean claimant could "sit or stand at will . . . because he did not request that the ALJ clarify how often one with [her] limitations would need to change positions before answering the question"). Finally, "Claimant has failed to suggest any other way

in which the" RFC finding or "hypothetical question could be interpreted." *Cumbess*, 2009 WL 3064526, at *1. Accordingly, all arguments bearing upon an alleged need to further define the sit/stand option are unavailing.

With regard to the claimed essentiality of "elevat[ing] her legs while sitting," Plaintiff points to "records from treating neurologist Dr. [Mark K.] Emas document[ing her] swollen feet." Memorandum at 12; *cf.* Tr. at 457, 468 (mentioning "swelling in the feet"). In addition, she cites "a note dated December 27, 2006 and submitted to the Appeals Council [(AC)]," Memorandum at 12, in which Dr. Emas wrote "keep legs elevated as needed to [reduce] pedal edema[.]" Tr. at 521 (capitalization omitted).

The documentation referenced by Claimant that was before the ALJ does not provide details about the condition of her feet, nor does it indicate any functional restrictions relating thereto. As there is no mention of a requirement to elevate her legs, the judge should not be faulted for failing to recognize it on the basis of this information.

A different standard governs consideration of the December 27, 2006, note. Upon the submission of

> new noncumulative and material evidence to the AC after the ALJ's decision, the AC shall consider such evidence, but only where it relates to the period on or before the date of the ALJ's hearing decision. Material evidence is evidence that is relevant and probative so that there is a reasonable possibility that it would change the administrative result. When evidence is submitted for the first time to the AC, that new evidence becomes part

> of the administrative record. The AC considers the entire record, including the new, material, and chronologically relevant evidence, and will review the ALJ's decision if the ALJ's action, findings, or conclusion is contrary to the weight of the evidence currently of record.

*Smith v. Soc. Sec. Admin.*, 272 F. App'x 789, 800-01 (11th Cir. 2008) (per curiam) (internal quotation marks and citations omitted). If it "denies review after consideration of new evidence, a court should determine whether [20 C.F.R.] § 404.970(b) or § 416.1470(b) has been violated by the denial of review because the law judge's decision is contrary to the weight of the evidence of record, including the new evidence." *Tucker v. Astrue*, No. 8:07-CV-621-T-TGW, 2008 WL 2811170, at *7 (M.D. Fla. July 21, 2008). Upon finding such a violation, the appropriate course "is to remand the matter to the Commissioner so that the administrative review that was improperly denied is undertaken." *Id*.[4]

On May 23, 2007, Plaintiff apparently submitted to the Appeals Council records including the note quoted above. *See* Tr. at 516, 521. Upon receiving the information, the AC stated it "considered the reasons [Claimant] disagree[d] with the decision and the additional evidence listed on the enclosed Order of Appeals

---

[4] "'Section 405(g) permits a district court to remand an application for benefits to the Commissioner . . . by two methods, which are commonly denominated "sentence four remands" and "sentence six remands . . . ."'" *Barclay v. Comm'r of Soc. Sec. Admin.*, 274 F. App'x 738, 743 (11th Cir. 2008) (per curiam) (quoting *Ingram*, 496 F.3d at 1261) (alterations in *Barclay*). "[W]hen 'evidence properly presented to the Appeals Council has been considered by the Commissioner and is part of the administrative record[,]'" a sentence four remand is the proper remedy. *Id*. at 744 (quoting *Ingram*, 496 F.3d at 1269).

Council[,]" but ultimately "found no reason . . . to review the [ALJ]'s decision. Therefore [it] denied [the] request for review." *Id*. at 6. Accordingly, "it did not err by failing to consider the new evidence." *Smith*, 272 F. App'x at 801; *see also Barclay v. Comm'r of Soc. Sec. Admin.*, 274 F. App'x 738, 743 (11th Cir. 2008) (per curiam). However, because the AC declined to review the decision, it can be inferred the council held the view that the ALJ's decision was not contrary to the weight of the evidence in the record, including the note. *Cf. Couch v. Astrue*, 267 F. App'x 853, 857 (11th Cir. 2008) (per curiam); *Levy v. Astrue*, No. 07-80157-CIV, 2008 WL 4753518, at *24 (S.D. Fla. Oct. 28, 2008).

The Commissioner does not explicitly contest that the note was new, noncumulative, and material. Nevertheless, assuming the requirements are satisfied, the report did not render the ALJ's decision contrary to the weight of the record as a whole. As Defendant observes, "there is no indication that this [alleged] restriction is permanent[,]" Opposition at 15, or otherwise met the durational requirement. Moreover, the note does not state it pertains to the relevant period and fails to specify how often Claimant's legs would likely need to be elevated. In other papers submitted to the Appeals Council but not relied upon by Plaintiff, individuals other than physicians supply recommendations relating to pedal edema. A chiropractor opines Claimant's legs should be

elevated "daily[,]" Tr. at 520, and a nurse states Ms. Foster "would benefit from elevating her legs during the day." *Id.* at 519. The chiropractor's advice would not establish a need to raise the legs during work hours, as opposed to before and/or after work or during standard breaks. The nurse's statement is likewise vague and characterizes the activity as beneficial rather than as medically necessary.[5]

Additionally, the rest of the record fails to establish edema of the feet such that the ALJ's RFC evaluation must be found deficient. While a report from October 2005 from Dr. Emas mentions "swelling in the feet[,]" *id.* at 468, providers on various occasions both before and after this assessment found no lower extremity swelling, suggesting the problem is transient or infrequent. *See, e.g., id.* at 268-70, 274, 276, 279-84, 286, 290-98, 301, 304-05, 307-09, 406-07, 409-11, 414-17, 518 (no swelling/edema indicated); 319 (extremities normal); 329 (entire physical examination normal); 344 (no edema of the extremities); 347 ("no lower extremity swelling"); 451 (normal extremities); 484 (no edema of the extremities); 498 (extremities within normal limits). And Plaintiff herself testified her feet would swell "*if* [she] st[ood] for . . . more than an hour . . . or so." *Id.* at 47-48 (emphasis added). Claimant's own description of her difficulty,

---

[5] The records from the nurse and chiropractor also postdate the Decision and omit mention of the time period to which they relate.

then, would seem accommodated by the restriction that she be able to sit or stand at will.

In light of the foregoing, Plaintiff's instant argument that the RFC finding or vocational hypothetical is deficient should be rejected.

**B. Treating Doctor**

In Claimant's view, the judge erroneously "rejected treating neurologist Dr. [George G.] Feussner's opinion that [she] was limited to part-time work." Memorandum at 13. He then is said to have inappropriately "relied on the opinions of a lay adjudicator, a non-examining physician, and a one-time examining physician." *Id.*

Unless rejected for good cause, a treating physician's opinion "is entitled to substantial weight[.]" *Ogranaja v. Comm'r of Soc. Sec.*, 186 F. App'x 848, 850 (11th Cir. 2006) (per curiam) (quoting *Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991)); *see also Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004). Further, the weight afforded a treating doctor's opinion must be specified along with "any reason for giving it no weight, and failure to do so is reversible error." *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986); *see also Russell v. Astrue*, No. 08-16812, 2009 WL 1652403, at *3 (11th Cir. June 15, 2009) (per curiam) (same); *Phillips*, 357 F.3d at 1241 ("When electing to

disregard the opinion of a treating physician, the ALJ must clearly articulate [his or her] reasons.").

"The treating physician's report may be discounted when it is not accompanied by objective medical evidence or is wholly conclusory." *Edwards*, 937 F.2d at 583; *see also Ogranaja*, 186 F. App'x at 850; *Phillips*, 357 F.3d at 1240-41. ALJs, however, may not simply substitute their own judgment for that of a medical expert. *See Wind v. Barnhart*, 133 F. App'x 684, 691 (11th Cir. 2005) (per curiam); *Graham v. Bowen*, 786 F.2d 1113, 1115 (11th Cir. 1986) (per curiam). It has sometimes even been stated that, "[w]here the [Commissioner] has ignored or failed properly to refute a treating physician's testimony, . . . as a matter of law . . . he has accepted it as true." *MacGregor*, 786 F.2d at 1053.

The ALJ noted that "[o]n January 13, 2004 and March 9, 2004, George Feussner, M.D., a treating neurologist, reported that the claimant was able to do light duty work, with no sitting or standing for more than 30 minutes at a time[.]" Tr. at 22; *cf. id.* at 237, 239, 250. Later, the doctor

> reported that the claimant was unable to return to her usual job, and on April 6, 2004, he stated that she should be able to perform part-time light work. Yet, on April 21, 2004, Dr. Feussner reported that the claimant had no loss of motion or deformity of the major joints, normal grip strength, and normal gait and station. Hence, the Administrative Law Judge finds no basis for Dr. Feussner's subsequent restriction of the claimant to part-time work.

*Id.* at 22 (citations to record omitted); *cf. id.* at 235, 238.

The judge's analysis is deficient. He explains that he rejected Dr. Feussner's restriction of Ms. Foster to part-time work in part by implying the physician had, prior to April 6, 2004, not mentioned any such limitation. However, contrary to the ALJ's description of the March 9, 2004, Work Status Letter, on that document is specifically written "20 [hours] per week[.]" *Id.* at 237. Similarly, a note from the same date on Dr. Feussner's letterhead states Plaintiff "should be able work part-time." *Id.* at 236. It appears the judge, unfortunately, overlooked both of these references.[6]

The ALJ's other ground for rejection, that "on April 21, 2004, Dr. Feussner reported that the claimant had no loss of motion or deformity of the major joints, normal grip strength, and normal gait and station[,]" *id.* at 22, is also insufficient. There is simply no inherent inconsistency between the abilities identified and a limitation to part-time work. Put otherwise, normal joints, grip strength, and gait standing alone do not demonstrate a capacity to work full-time.

Though not discussed by the ALJ, it is observed that approximately two weeks after "an automobile accident [that occurred] on October 13, 2003[,]" Dr. Feussner found "reduced range

---

[6] Perhaps the January 2004 Work Status Letter, *see id.* at 250, could be seen as in tension with the one issued after the March appointment. Nevertheless, it is not for the Court to substitute a rationale for that actually offered by the ALJ, and it is unlikely this circumstance by itself would justify discarding the doctor's opinion.

of motion of the cervical spine[,] a positive Tinel's sign at both wrists associated with reduction in grip strength[,] and a mild degree of limitation of range of motion" in the lumbar area. *Id.* at 248. On April 21, 2004, while grip strength was reported as normal, the doctor indicated both lumbar and cervical spasm or loss of motion were present. *Id.* at 260. His 2004 report was therefore in line with the 2003 evaluation, and the judge's selective use of items from the more recent questionnaire must be deemed unwarranted.

Thus, in view of the foregoing remand is being recommended for a reevaluation of Claimant's RFC and, of course, all the evidence currently of record should be considered. Furthermore, inasmuch as the Commissioner admits "[t]he ALJ did erroneously believe that the state agency consultant who indicated Plaintiff was capable of light work was a physician[,]" and relied thereon, Opposition at 8 n.5; *cf.* Memorandum at 15; Tr. at 252-59, if remanded the judge will be aware of the identity of the individual who completed the evaluation.[7]

### C. Pain/Credibility

It is maintained "the ALJ erroneously found [Ms.] Foster not credible." Memorandum at 17 (emphasis omitted). Plaintiff alleges

---

[7] In reassessing RFC, the ALJ will also, of course, need to reweigh the evidence from 1) Dr. Timothy J. McCormick, *see* Tr. at 327-33; and from 2) the state agency physician, *see id.* at 334-41, who may have mischaracterized the March 2004 information from Dr. Feussner and omitted acknowledgment of disc herniation. *See id.* at 335 ("03/09/04 MSO may RTW Light duty"; "MRI studies show DDD of the neck and back."); *cf. id.* at 236-37, 240; Memorandum at 16.

the judge's defective "credibility finding resulted in harmful error when assessing [her] complaints of pain and limitations." *Id.* at 18.

The regulations recognize "[p]ain or other symptoms may cause a limitation of function beyond that which can be determined on the basis of the anatomical, physiological or psychological abnormalities considered alone[.]"  20 C.F.R. §§ 404.1545(e), 416.945(e); *see also Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992) (per curiam).  The standard in the Eleventh Circuit for evaluating the Commissioner's treatment of pain testimony has been articulated as follows:

> The [Commissioner] must consider a claimant's subjective testimony of pain if she finds evidence of an underlying medical condition, and either (1) objective medical evidence to confirm the severity of the alleged pain arising from that condition, or (2) that the objectively determined medical condition is of a severity that can reasonably be expected to give rise to the alleged pain.

*Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (per curiam); *see also Russell*, 2009 WL 1652403, at *4; *Eckert v. Comm'r of Soc. Sec.*, 152 F. App'x 784, 790 (11th Cir. 2005) (per curiam); SSR 96-7p (outlining how subjective complaints are to be evaluated).  "A claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability."  *Foote*, 67 F.3d at 1561; *see also Russell*, 2009 WL 1652403, at *4.

The judge cited 20 C.F.R. § 404.1529 along with SSR 96-7p, *see* Tr. at 22, and his discussion reveals application of the pain standard. He determined

> the claimant's alleged symptoms and limitations . . . could not reasonably be expected to emanate from her medically determinable impairments (Social Security Ruling 96-7p). The claimant testified that she cannot work due to hypertension, a heart murmur, ruptured disk in her back, diabetes, and a "bad" memory. The claimant testified that she is presently involved in two personal injury lawsuits. She admitted that she has not looked for work, registered with the State Unemployment Office, or pursued vocational rehabilitation. Instead, with the exception of glucose testing, it appears that she has chosen to follow a treatment pattern to support her pending litigation. The claimant has had multiple accident claims, as well as a Worker's Compensation history that is suspicious for malingering.

*Id.* at 23.

Ms. Foster takes issue with several aspects of this analysis. She first rightly charges "[t]he ALJ did not explain what part of [her] treatment pattern was to support her litigation, and not for the purpose of actual medical treatment." Memorandum at 17 (internal quotation marks omitted). Regarding "a Worker's Compensation history that is suspicious for malingering[,]" Tr. at 23, Plaintiff declares there is neither a "basis for the ALJ's finding that [she] was malingering" nor "documentation of a workers' compensation history[.]" *Id.* The judge in fact provides no citations for his assertions, and in the Opposition Defendant seemingly ignores both the ALJ's assertion as to a *history* of workers' compensation and Claimant's argument directed thereto.

That Ms. Foster "testif[ied] she obtained disability benefits from her job[,]" Opposition at 9, establishes no such history. *Cf.* Tr. at 53-54 (testimony as to a single period of "short term disability" payments, which were apparently received subsequent to the alleged onset date). If remanded, the judge should reevaluate Plaintiff's credibility and if again discounted make sure to articulate specific reasons supported by the record.

"In deciding the claimant's residual functional capacity, the Administrative Law Judge considered the claimant's alleged symptoms and limitations, and concluded that they could not reasonably be expected to emanate from her medically determinable impairments[.]" *Id.* at 23. He determined "the medical record . . . contains little evidence of objective abnormalities." *Id.* at 24 (also referring to "the minimal objective findings"). Claimant responds by pointing to "cervical and lumbar impairments . . . documented by MRI[,]" as well as "wrist impairments" shown "by EMG and nerve conduction testing." Memorandum at 18. She states the latter testing also "confirmed that [her] existing nerve impingement had progressed to radiculopathy, and that her carpal tunnel symptoms continued." *Id.*

As part of his step two analysis, the ALJ acknowledged "[t]he existence of the claimant's disorders of the spine is established by magnetic resonance imaging[.]" Tr. at 21. He further recognized an "EMG revealed evidence that was consistent with S1 lumbosacral radiculopathy[, t]he existence of the claimant's

pinched nerves in her wrists is established by . . . EMG and NCV studies[, and] mild to moderate carpal tunnel syndrome" was shown by another EMG. *Id.* He was clearly cognizant of these conditions when deciding whether the first prong of the pain standard had been met. *See, e.g., id.* at 24 (discussing "the claimant's disorders of the spine and pinched wrist nerves[, which] could reasonably be expected to cause mild pain").[8] Ultimately, however, he concluded that, "[w]hile the claimant's complaints of pain have some basis in objective findings, the evidence fails to establish that the level of pain precludes all work." *Id.* Nonetheless, if remanded credibility will be reexamined, and in view thereof he will need to take another look at whether the pain standard has been satisfied.

## IV. Conclusion

In accordance with the foregoing, it is recommended that the Clerk of the Court be directed to enter a judgment pursuant to sentence four of 42 U.S.C. § 405(g), and as incorporated by 42 U.S.C. § 1383(c)(3), **REVERSING** the Commissioner's decision with instructions to 1) reassess Plaintiff's RFC; 2) review the evidence from Dr. Feussner; 3) reevaluate Ms. Foster's credibility,

---

[8] The contention "the ALJ erroneously failed to determine whether the EMG and nerve conduction testing confirmed her complaints of wrist pain and back pain with nerve impingement," Memorandum at 19, consequently should be rejected.

including a redetermination of whether the Eleventh Circuit pain standard has been met; and 4) conduct any further proceedings deemed appropriate.

**DONE AND ENTERED** at Jacksonville, Florida, this 19th day of November, 2009.

/s/ Howard T. Snyder
HOWARD T. SNYDER
UNITED STATES MAGISTRATE JUDGE

Copies to:

The Honorable Howell W. Melton
Senior United States District Judge

Counsel of record
    and pro se parties, if any